568 So.2d 1025 (1990)
LOUISIANA STATE BAR ASSOCIATION
v.
Martin S. SANDERS, Jr.
No. 89-B-1781.
Supreme Court of Louisiana.
October 22, 1990.
Rehearing Denied December 13, 1990.
*1026 Thomas O. Collins, G. Fred Ours, for Louisiana State Bar Ass'n plaintiff-applicant.
Martin S. Sanders, Jr., Leonard Fuhrer, Charles Raymond Whitehead, Jr., for Martin S. Sanders, Jr. defendant-respondent.
WATSON, Justice.
In this disciplinary proceeding against attorney Martin S. Sanders, Jr., the issue is the appropriate sanction for Sanders' violation of Disciplinary Rule 5-103(A)[1] which prohibited[2] a lawyer from acquiring a proprietary interest in his client's cause of action.

FACTS
Urzula Cloud Hatch was the record owner of a twenty acre tract of property, part of a forty acre farm which had been owned by her parents, Noah and Lucy Cloud. Urzula was one of the Clouds' five children. She acquired the record title in a property settlement with her former husband, Bonnie M. Hatch. Sanders represented her husband in the divorce. Bonnie M. Hatch testified that he had purchased the property from Noah Cloud for $2,000. His former in-laws said title had been placed in Hatch's name to keep Noah Cloud, invalid and senile, from giving away the royalties. Urzula Hatch was deposed before trial, testified at trial and was deposed a second time after trial. Her testimony about ownership of the property was not consistent.[3]
In 1964, when title to the twenty acre tract was put in the name of B. M. Hatch, Mr. and Mrs. Cloud went to live with Mr. and Mrs. Hatch. Noah Cloud survived until December of 1966. Shortly after his death, his widow was interdicted. The interdict, Lucy Cloud, stayed with her daughter for a total of sixteen years and seven months. Bonnie Hatch said the care of Mr. and Mrs. Hatch was not a consideration for the deed.
Noah Cloud had leased the property's mineral rights in 1963. Placid Oil Company made royalty payments on the production to Noah Cloud from October of 1965 until January of 1968.
After Noah Cloud died, Urzula Hatch was named administratrix of his estate. The detailed descriptive list of succession property sworn to by Urzula Hatch on January 12, 1968, included future royalty payments on the twenty acre tract. Royalties of $221,992.96 were paid to Urzula Hatch as administratrix between January of 1968 and May of 1981. Twenty-eight tableaus of distribution were filed. Some of the money was allocated to the Curatrix of Lucy Cloud; an allowance was made to the Administratrix; and the balance was periodically divided among the five Cloud heirs.[4] All of the tableaus identified the funds as belonging to Lucy Cloud, one-half as owner and one-half as usufructuary.
Following her mother's death on March 11, 1980, Urzula Hatch consulted attorney Sanders about a dispute with her four siblings over ownership of the property. Sanders had no prior involvement with the succession proceedings. Urzula Hatch wanted a ten acre portion, not eight, because she had cared for her parents. She was unable to pay Sanders, who told her she had title to the tract. On June 20, 1980, she transferred one-fourth of the *1027 tract's minerals to him in exchange for $10,000.00 in legal services.
On May 19, 1981, the four Cloud siblings filed a rule to show cause in the succession of Noah Cloud, alleging that the administratrix had been receiving royalty checks from Placid Oil Company; that the succession should be audited; and that Urzula Cloud Hatch should be removed as administratrix. On July 17, 1981, Sanders answered the rule on behalf of Urzula Hatch, alleging that the tract and its royalties belonged to her rather than the succession. On August 31, 1981 Urzula Hatch transferred an additional one-twelfth of the minerals to Sanders in exchange for $10,000.00 in legal services.
Between 1981 and 1985, Sanders was paid $108,945.51 by Placid. During the same period, Urzula Hatch was paid $249,809.95. According to Sanders, there was a dramatic increase in the royalties after he acquired his interests, creating an unanticipated windfall.
On May 7, 1984, the Cloud siblings attacked the transfers to Sanders. The trial court dismissed their suit. The court of appeal held that Sanders did not violate the Code of Professional Responsibility because the mineral interests he acquired were not litigious rights.[5] A writ was granted to review the judgment of the court of appeal.[6]
In Succession of Cloud,[7] the transfers from Urzula Cloud Hatch to Martin S. Sanders, Jr. were declared a nullity because Sanders violated DR 5-103(A). Succession of Cloud pretermitted the question of whether Sanders' acquisition of the minerals constituted the purchase of a litigious right contrary to LSA-C.C. art. 2447.[8] Sanders was adjudged guilty of violating the Code of Professional Responsibility, and the only remaining issue is the appropriate sanction.[9]
After the decision was rendered in Succession of Cloud, the Committee on Professional Responsibility of the Louisiana State Bar Association advised Sanders that a formal investigatory hearing concerning his conduct would be held. After the hearing, the Committee agreed that Sanders was guilty of professional misconduct. A Commissioner was appointed, who concluded that Sanders had unintentionally violated the Code of Professional Responsibility, specifically DR 5-103(A), by acquiring a proprietary interest in the subject matter of his client's dispute. In addition, the minerals became the subject of litigation before the second transfer to Sanders on August 31, 1981. The Committee has suggested eighteen months' suspension as an appropriate sanction.

LAW
LSA-C.C. art. 2447 prohibits attorneys and other public officers connected with courts of justice from purchasing litigious rights.[10] Although prohibited, such a purchase is not necessarily dishonest: it is not malem in se. Sanders v. Ditch, 110 La. 884, 34 So. 860 (1903). An exception in LSA-R.S. 37:218 allows attorneys to acquire an interest in the subject matter of a suit to secure their fees.[11]
There are two exceptions to DR 5-103(A): a lien to secure a lawyer's fee and a contingent fee contract. Buck & Beauchamp v. Blair & Buck, 36 La.Ann. 16 (1884) discusses the contingent fee exception to the prohibited purchase of a litigious *1028 right. Compare Hope v. Madison, 192 La. 593, 188 So. 711 (1939) where the attorney's recovery was contingent on the favorable decision of a lawsuit and production from the property.
Gautreaux v. Harang, 190 La. 1060, 183 So. 349 (1938) held that Civil Code article 2447 did not prohibit an attorney from purchasing an interest in a client's disputed claim to immovable property when no suit was pending at the time of the purchase. Gautreaux is contrary to the French commentators, who interpreted the corresponding article of the French Code to prohibit not only the purchase of rights in litigation but rights requiring litigation.[12]
Succession of Cloud did not overrule Gautreaux but held that the prohibition in DR 5-103(A) against an attorney acquiring a proprietary interest in the cause of action or subject matter of litigation being handled for a client is broader than the Gautreaux interpretation of Civil Code article 2447. DR 5-103(A) forbids an attorney from acquiring any right "which is genuinely disputed and likely to become the subject of litigation."[13] The interpretation of DR 5-103(A) in Succession of Cloud was new and represented a change in the law.[14] See Succession of Powers v. Howcott, 137 La. 818, 69 So. 198 (1915).
Transactions between a lawyer and client are closely scrutinized because of the advantage held by a lawyer in dealing with a lay person. See Phipps v. Willis, 53 Or. 190, 96 P. 866 (1908). When a lawyer is guilty of overreaching in dealing with a client, an appropriate punishment must be imposed. Determining the proper discipline involves weighing the attorney's conduct in light of any aggravating or mitigating factors.[15]

AGGRAVATING FACTORS
Although the recited consideration for the transfers was $20,000, Sanders has received $108,945.51. All attorney's fees must be reasonable. The amount of Sanders' compensation casts doubt on his good faith; it is an aggravating circumstance.
Sanders testified that he disbursed many of the royalties he received: $19,000 to Urzula Hatch; $38,000 to one D. F. Miles; over $12,000 to First Federal; and other cash to the Hatch children. None of these payments are documented. Sanders admitted keeping approximately $18,000 in fees but no accounting was furnished to Urzula Hatch. Sanders' failure to account for the funds is an aggravating factor.
At the time of the second transfer, August 31, 1981, Ms. Hatch's right to the royalties from the tract had been challenged by a rule to show cause filed in the succession of Noah Cloud by her four siblings. Her answer to the rule, filed by Sanders on July 17, 1981, asserted that she, rather than the succession, owned the tract and its royalties. By July 17, 1981, at the latest, the mineral interests in the twenty acre tract had become a litigious right. This is a further aggravating factor.

MITIGATING FACTORS
Sanders' first acquisition was not a litigious right. Before the decision in Succession of Cloud, the prohibition in DR 5-103(A) only extended to a client's property which was the subject of litigation. Thus, the rule did not apply to Sanders' first acquisition at the time of transfer. This is a mitigating circumstance.
The Commissioner concluded that Sanders' transgression was unintentional. This is a mitigating factor.
The client, Urzula Hatch, was not financially harmed by the transaction. Placid paid her $249,809.95 in royalties between 1981 and 1985, substantially more than her one-fifth interest justified.[16] This is a mitigating factor.
*1029 In view of Urzula Hatch's conflicting testimony, it is impossible to know what representations she made to Sanders in 1980. He could reasonably have believed that her former husband had purchased the twenty acre tract from Noah Cloud. This factor weighs in Sanders' favor.
Ms. Hatch owned at least one-fifth of the twenty acre tract.[17] Sanders could have guaranteed his fee either by taking a contingent interest in the remaining four-fifths[18] or placing a lien on the undisputed one-fifth. As an attorney dealing with a client, Sanders had to structure his fee arrangement within the parameters of the law. However, the fact that he could have obtained a similar result without censure is a mitigating factor.

CONCLUSION
Considering all of the circumstances, nine months' suspension from the practice of law is an appropriate sanction.

ORDER
IT IS ORDERED, ADJUDGED AND DECREED that Martin S. Sanders, Jr. be suspended from the practice of law for a period of nine months. All costs are assessed to respondent.
DENNIS, J., concurs and assigns reasons.
DENNIS, J., concurring.
I respectfully concur.
I concur only to clarify the majority's statement that there are two exceptions to DR 5-103(A)'s prohibition against a lawyer acquiring a proprietary interest in the subject matter of litigation he is conducting for the client. I believe such a statement leaves open the possibility of the erroneous interpretation that a contingent fee contract vests the attorney with an actual ownership interest in the client's cause.
DR 5-103(A) provides, in pertinent part, as follows:
A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation he is conducting for a client, except that he may:
(1) Acquire a lien granted by law to secure his fee or expenses.
(2) Contract with a client for a reasonable contingent fee in a civil case.
The two allowances contained in DR 5-103(A) are merely actions an attorney can undertake to protect his fee, which happen to affect the client's ownership interest in the subject matter of the litigation. However, neither a contingent fee contract nor a lien creates an actual ownership interest in the client's cause for the attorney. A contingent fee contract vests the attorney with an interest which is in the nature of a privilege rather than an actual ownership right. See Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1978); Calk v. Highland Construction & Manufacturing, 376 So.2d 495 (La.1979); Scott v. Kemper Insurance Co., 377 So.2d 66 (La.1979).
NOTES
[1] "(A) A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation he is conducting for a client, except that he may:

(1) Acquire a lien granted by law to secure his fee or expenses.
(2) Contract with a client for a reasonable contingent fee in a civil case."
[2] On January 1, 1987, after Sanders' offense, new Rules of Professional Conduct replaced the former Code of Professional Responsibility. Under the new Rules of Professional Responsibility, Rule 1.8 governs the conduct in question. Rule 1.8(j) retains the text of former Rule 5-103(A).
[3] E.g. Pretrial Deposition: "Yes, my daddy said he sold it to Hatch." TR. 345.

Trial: "He [Hatch] bought the property." TR. 351.
Post Trial: "It [the property] was put over in Hatch's name for convenience. He wasn't buying it." Deposition, March 19, 1987, p. 7.
[4] Urzula Cloud Hatch, Dwight Cloud, Lessie Cloud Holly, Dalton Cloud and Carson Cloud.
[5] 508 So.2d 577 (La.App.2d Cir.1987).
[6] 513 So.2d 280 (La.1987).
[7] 530 So.2d 1146 (La.1988).
[8] "..., it is unnecessary to address the Article 2447 issue." 530 So.2d at 1149.
[9] Since attorney disciplinary proceedings are not criminal, the presumption of innocence is not a constitutional requisite. See Rosenthal v. Justices of the S.Ct. of California, 910 F.2d 561 (9th Cir.1990).
[10] Art. 2447. Sale of litigious rights

Art. 2447. Public officers connected with courts of justice, such as judges, advocates, attorneys, clerks and sheriffs, can not purchase litigious rights, which fall under the jurisdiction of the tribunal in which they exercise their functions, under penalty of nullity, and of having to defray all costs, damages and interest.
[11] Before its 1989 amendment, LSA-R.S. 37:218 provided:

By written contract signed by his client, an attorney at law may acquire as his fee an interest in the subject matter of a suit, proposed suit, or claim in the assertion, prosecution or defense of which he is employed, whether the claim or suit be for money or for property. In such contract, it may be stipulated that neither the attorney nor the client may, without the written consent of the other, settle, compromise, release, discontinue or otherwise dispose of the suit or claim. Either party to the contract may, at any time, file and record it with the clerk of court in the parish in which the suit is pending or is to be brought or with the clerk of court in the parish of the client's domicile. After such filing, any settlement, compromise, discontinuance, or other disposition made of the suit or claim by either the attorney or the client, without the written consent of the other, is null and void and the suit or claim shall be proceeded with as if no such settlement, compromise, discontinuance, or other disposition had been made.
[12] See Comment, The Sale of a Litigious Right, 13 Tul.L.Rev. 448, 457 (1939) and Comment, The Transfer of Litigious Rights in Louisiana Civil Law, 1 La.L.Rev. 593, 595-99 (1939).
[13] 530 So.2d at 1150.
[14] Compare LSA-C.C. art. 2653 which defines a litigious right as the subject of a contested suit.
[15] See La.Sup.Ct. Rule XIX, Sec. 10(C) (1990).
[16] It is alleged that a civil suit for the balance of the money is pending, pretermitting the question of financial damage to the Cloud siblings.
[17] By asserting that the property belonged to the succession of Noah Cloud, her four siblings recognized her one-fifth interest.
[18] See Succession of Landry, 116 La. 970, 41 So. 226 (1906).