616 So.2d 803 (1993)
Robert M. WATSON, Administrator of Succession of Linda S. Dubuisson, Plaintiff-Appellee,
v.
Patsy Sibley COOK, et al., Appellants-Appellees.
Patsy S. COOK, et al., Plaintiffs-Appellants,
v.
Thomas K. KIRKPATRICK et al., Defendants-Appellees.
Nos. 24562-CA, 24563-CA.
Court of Appeal of Louisiana, Second Circuit.
March 31, 1993.
Writ Denied June 18, 1993.
*804 Hall & Golden by W. Eugene Golden, Shreveport, for Nancy Zucco and Patsy S. Cook, appellants-appellees.
John D. Crigler, St. Joseph, for Gary L. Keyser and T.K. Kirkpatrick, appellants-appellees.
Robert T. Talley, Baton Rouge, for Heirs of Katherine S. Straughn, appellants-appellees.
Jerry F. Pepper, Baton Rouge, for Irma S. Tucker, appellant-appellee.
Before MARVIN, C.J., and NORRIS and WILLIAMS, JJ.
MARVIN, Chief Judge.
After the will of their collateral ancestor in Succession of Dubuisson, 378 So.2d 1049 (La.App.2d Cir.1979), writ denied, was declared invalid, the litigants in this later concursus proceeding, who disputed their contingency fee and other contracts they made with their attorneys, appeal a judgment upholding, in part, some of the contracts. The defendant attorneys, who also appeal the judgment, complain that their contingency fee was reduced as to some clients from one-third to one-fourth.
We find the one-third contingency fee contracts of the original plaintiffs in the will case to be valid and enforceable and affirm that part of the judgment. We amend, however, to further reduce the fee owed by the other clients. As amended, we affirm and remand with directions.

FACTS
Five lines of collateral relations survived Ms. Linda Dubuisson who died in 1976 after having executed what purported to be a nuncupative will by public act. This will made particular bequests and named a nephew and niece as universal legatees.
Irma Sibley Tucker, and two of her three brothers, Melville and Charles Sibley, who were in one of the collateral lines of intestate heirs, desiring to attack the will of Ms. Dubuisson, executed a retainer agreement for this purpose with the law firm of Dozier, Keyser and Kirkpatrick. The contingency *805 fee agreement obligated these clients to pay that law firm one-third of their intestate inheritance from Ms. Dubuisson's succession in the event their action to set aside the will proved successful.
As that action slowly proceeded to a final judgment other lines of collateral heirs appeared, including Katherine Sibley Straughn, Nancy Sibley Zucco and Patsy Sibley Cook. The trial court upheld the will. Plaintiffs, who were Ms. Tucker and two of her brothers, appealed.
While the appeal in the will case was pending, Ms. Tucker, who was contacted by Ms. Straughn, suggested that Ms. Straughn contact the attorneys Keyser and Kirkpatrick who represented Ms. Tucker and her two brothers. The law firm thereafter advised Ms. Straughn and her sisters, Ms. Zucco and Ms. Cook, about the pending appeal and solicited from them written retainer-contingency fee agreements which obligated them to pay one-third of their inheritance from Ms. Dubuisson's succession in the event the appeal resulted in setting aside the will.
This court reversed the trial court and rendered a judgment setting aside the will on December 3, 1979. Appellees in the will case applied for writs to the Louisiana Supreme Court. That application was pending on December 28, 1979, when the defendant lawyers, having become anxious about collecting their fee, convened a meeting at which five of their clients entered into an "Act of Transfer" that conveyed one-third of their interest in the succession to Keyser and Kirkpatrick for their services, and into an additional "Conveyance Agreement" in which these clients acknowledged that Keyser and Kirkpatrick had earned their contingency fees and obligated themselves to pay an hourly rate for the legal services necessary to conclude the intestate succession proceedings.
The Louisiana Supreme Court denied appellees' writ application March 3, 1980. The judgment placing the heirs of Ms. Dubuisson in possession of her estate was signed February 17, 1982. Ms. Tucker and her three brothers were each placed in possession of a 63/864ths interest. Ms. Cook and her two sisters were each placed in possession of an 84/864ths interest. The record in this appeal indicates that the gross value of Ms. Dubuisson's estate was about $1.8 million.
A month after the judgment of possession was signed, in the light of the fee dispute that had arisen between Kirkpatrick and Keyser and some of their clients, the administrator instituted a concursus proceeding to resolve the matter. Ms. Cook and Ms. Zucco thereafter, through new counsel, brought a separate action to set aside their contracts with Kirkpatrick and Keyser. This action was consolidated and tried with the concursus proceeding. The appellants of the judgment below are: Ms. Tucker, Ms. Cook, Ms. Zucco, the heirs of Ms. Straughn, and Keyser and Kirkpatrick.

MS. TUCKER'S FEE CONTRACT
Irma Tucker contends she owes the attorneys nothing because she twice terminated her attorney-client relationship with Kirkpatrick and Keyser "for cause" and because of their "unethical" conduct.
The trial court found that the initial contingency fee agreement signed by Irma Tucker with the law firm of Dozier, Keyser and Kirkpatrick was a standard form contingency fee agreement. That firm was thereafter dissolved upon Attorney Gil Dozier's departure from that firm. Tucker's initial answer to the concursus proceeding alleged that she never formally "hired" the law firm of Kirkpatrick, Keyser and Kirkpatrick and, in any event, that she terminated in 1980 whatever relationship existed between her and that firm. The record belies her contentions and supports the trial court's conclusions to the contrary.
Upholding the validity of Ms. Tucker's agreement to pay the one-third fee to that law firm, we edit and adopt these factual conclusions of the trial court:
By letter dated June 17, 1977 Irma Tucker dismissed the law firm of Dozier, Keyser and Kirkpatrick, stating that she was no longer in need of their services in connection with the settlement of the *806 succession of Linda Dubuisson. No reason for the dismissal was stated....
Gary Keyser testified that, upon receipt of this letter, he immediately contacted Ms. Tucker by phone. He stated that Ms. Tucker said the letter of discharge was actually directed at Gil Dozier and intended for him alone. It was his contention that Irma confirmed the contract over the phone with Keyser and Kirkpatrick, and that she had employed Cora Schley as additional counsel. He introduced a memorandum from his files to confirm this telephone conversation.... The next day he wrote a letter of confirmation to Tucker, leaving no doubt that it was his impression that he and Kirkpatrick were still employed as attorneys in the matter....
Tucker countered by testifying that on July 15, 1977 she mailed a letter to Keyser again stating that she terminated the services of the firm and was now represented by another attorney.... Keyser stated that neither he nor anyone in his firm ever received such a letter. It is interesting to note that this exhibit is an original document. It is on heavy bond paper and is signed by Irma Sibley Tucker. Tucker stated that she had no carbon paper and just typed two originals, noting on the top of her copy the word "copy." This court believes the testimony of Keyser. It is incomprehensible that, had Keyser received such a letter, he would not have taken immediate steps to clarify his position.
Voluminous letters in the record indicate to the court that Keyser regularly corresponded with Tucker as a client. The record is replete with responses and other correspondence from Tucker that leave the court with no other conclusion than that Tucker considered Keyser and Kirkpatrick as her attorneys. While the letter dated July 15, 1977 may have been typed, it is the opinion of this court that it was never sent. Inspection of the document introduced into evidence shows that it originally contained a date of July 11, but that was erased and the date of July 15, 1977 entered. It is also noteworthy to this court that the signature of Irma Tucker is in black ink and the notation of the word "copy" at the top is with a different pen, being in blue ink. If this indeed was a copy to be retained in her personal file, it is the opinion of this court that the word "copy" would have been marked with the same pen with which the document was signed.
According to testimony at trial this first dismissal was based on job related problems between Irma Tucker and Gil Dozier, and Tucker feels that because these problems existed the termination could be considered proper cause for termination. This court disagrees. It is clear Tucker's problems at that time were personal in nature, and related solely to Gil Dozier. Any dismissal of Kirkpatrick and Keyser at this time was without just cause.
The record also shows that Irma Tucker in fact confirmed the employment of Keyser and Kirkpatrick before Judge Ragland in open court in St. Joseph. The testimony of Dennis Whalen further confirms the opinion of this court that Kirkpatrick and Keyser were in fact the attorneys of Irma Tucker. There is no question [Whalen] was hired as additional counsel, at a fee of five percent of any eventual collection, to be paid by Irma Tucker. This was later reduced to a figure of $2,500.00, and ultimately settled at a figure of $1,500.00, and paid by Irma Tucker. Whalen makes it quite clear that, had he been hired to represent Tucker fully in the proceeding, he would have expected a fee of one-third of the collection or an appropriate fee. He would not have been working for five percent. Neither would any other attorney who had the full burden of this involved litigation. Tucker further confirmed that fact by letter to the Clerk of Court in St. Joseph by affidavit correcting the representation shown on the record....
Tucker allegedly again terminated the employment of Kirkpatrick and Keyser on July 10, 1980. Again, no such document was ever received by Kirkpatrick and Keyser. Even had such a letter *807 been sent, the work at this point in time was substantially completed. This alleged termination was supposedly over concern of a conflict of the interest of Gary Keyser because of his association with the State Mineral Board. If such a termination notice had been sent, Keyser and Kirkpatrick would still have been entitled to their contractual fee for the reason that any such dismissal was clearly without just cause. At no point in time has the State Mineral Board ever been a party to these proceedings.
In the opinion of this court, Ms. Tucker is a shrewd and knowledgeable business women. Obviously she was not happy over having signed the one-third contingency contract. She was not happy with Gil Dozier. The record clearly reflects that she was not above utilizing the talents and knowledge of these young attorneys to her own benefit. Her cry of wolf is just too late. She advised her relatives... to employ them as their attorneys. No one who is as dissatisfied with representation as she claims to be would have done this. The contract with Kirkpatrick and Keyser was valid.

ACT OF TRANSFER AND CONVEYANCE AGREEMENT
Keyser and Kirkpatrick complain of the trial court's finding that the December 28, 1979, Act of Transfer and Conveyance Agreement between themselves and their clients constituted their acquisition of a litigious right, prohibited by C.C. Art. 2247. They contend that these contracts were nothing more than the fulfillment of their contingency fee contract because substantially all of the legal services contemplated in that contract had been completed on December 28, 1979.
While negating any fraud, misrepresentation, or other misconduct on the part of the attorneys, the trial court found the December 28 contracts invalid as the prohibited acquisition of a litigious right by an attorney in violation of CC Art. 2447 and DR 5-103.
The finality of the judgment of this court had not occurred on December 28, 1979, when the contracts were executed. Our judgment invalidating the will of Ms. Dubuisson was rendered December 3, 1979. Rehearing was denied January 9, 1980. Writs were denied by the supreme court on March 3, 1980.
C.C. Art. 2447 prohibits attorneys and other public officers connected with courts of justice from acquiring litigious rights. Louisiana State Bar Ass'n v. Sanders, 568 So.2d 1025 (La.1990). An attorney may acquire as his fee an interest in the subject matter of a suit of which he is employed. LRS 37:218. The Code of Professional Responsibility in effect in 1979 allowed a lawyer to contract with a client for a reasonable contingent fee in a civil case. Disciplinary Rules 2-106, 5-103 (now Rules 1.5, 1.8 of the Rules of Professional Conduct). See Farrar v. Kelly, 440 So.2d 939 (La.App. 2d Cir.1983), where a fifty percent contingency fee was affirmed in a succession case.
The trial court correctly ruled that the December 28, 1979, contracts constituted the prohibited acquisition of a litigious right. Louisiana State Bar Ass'n v. Sanders, supra. This ruling, however, does not negate the finding, below and here, that the contingency fee contracts executed by Ms. Tucker and her brothers are valid and enforceable.

THE CONTRACTS WITH OTHER HEIRS: MS. COOK, ZUCCO AND STRAUGHN
These three sisters contend that Keyser and Kirkpatrick unethically misrepresented matters and solicited their signatures on the contingency fee contract. In their initial answers to the petition for concursus, Cook and Zucco agreed to join in the motion to disburse funds to the attorneys and were in agreement as to the hourly rate under the conveyance agreement. They later filed amended answers contesting the validity of the retainer agreements. The trial court found no evidence of misrepresentation or any other ethical violation by the law firm. Because we find the fee *808 charged by the attorneys and the reduced fee allowed by the trial court to be unreasonable and unconscionable, we do not discuss or pass on the trial court's findings relative to the ethicality of the attorneys in obtaining the contracts.

THE TRIAL COURT'S DETERMINATION OF A REASONABLE FEE
Complaining of the unreasonableness of the fee, the clients contend that the trial judge should have determined the fee on a quantum meruit or services actually rendered basis and that the reduction from one-third to one-fourth is not a just reduction in light of this record. Ms. Straughn also contends that the "unreasonable" fees the attorneys have received should be refunded with interest.
Keyser and Kirkpatrick, of course, complain that the trial court reduced the contingency fee to one-fourth of what was received by Ms. Cook, Zucco and Straughn from the succession after finding that their contingency fee agreements were "valid." The lawyers assert that they fully satisfied the terms of the retainer agreements, that they spent a substantial amount of time representing these clients, and that there is no legal basis warranting a reduction of the fee Ms. Cook, Zucco and Straughn obligated themselves to pay. We consider the legal and ethical fee standards in effect when the contingency contracts were executed.
DR 2-106 of the former Code of Professional Responsibility stated:
(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.
(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee.
Factors to be considered as guides in determining the reasonableness of a fee include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) The fee customarily charged in the locality for similar legal services;
(4) The amount involved and the results obtained;
(5) The time limitations imposed by the client or by the circumstances;
(6) The nature and length of the professional relationship with the client;
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) Whether the fee is fixed or contingent.
A contingent fee contract for legal services makes the attorney's fee dependent upon the successful enforcement of the client's claim. The attorney bears the risk of loss of the time and effort he makes on behalf of the client. Such contracts promote the availability of needed legal services by reducing the risk of financial loss to the client and by allowing the less affluent to seek judicial resolution or recognition of his or her legal rights and privileges. See Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1978).
The prohibition against a lawyer accepting a clearly excessive or unreasonable fee, however, cannot be abrogated by a contingent fee contract, even a legislatively sanctioned contract. Central Progressive Bank v. Bradley, 502 So.2d 1017 (La.1987). Ethical Considerations in effect in the 1970's required a thorough "education" of a client by his or her lawyer about the fee and an explanation of why the lawyer recommended to the client the particular fee arrangement to the exclusion of other fee arrangements. The lawyer's economic interest must yield to the paramount interest of the client, whatever the nature or posture of the case.
Cook, Zucco, and Straughn executed their contingency fee agreements after the attorneys, for their other clients, filed their brief in this court on August 7, 1979, but before they orally argued their appeal in *809 this court on October 29, 1979. We take notice of those dates from the records of this court.
This court rendered its judgment promptly on December 3, 1979. The denial of the writ application also occurred promptly. We cannot agree with the lawyers' contention that they spent a "substantial" amount of time representing Ms. Cook, Zucco and Straughn before our judgment of December 3, 1979, became final March 3, 1980.
Before September 1979, the month in which Ms. Cook, Zucco and Straughn signed the contingency fee contracts, the trial in the will contest had been concluded, and the appeal had been entered and briefed by the attorneys.
While the lawyers represented their original clients for approximately five years, the other clients (the three sisters) were only represented for about two years. We have difficulty in determining from this record what the lawyers did for the three sisters before the judgment of this court was rendered on December 3, 1979. What the lawyers did for all clients between December 13, 1979, and February 11, 1981, is reflected in the intestate succession record and, for which, they agreed to be paid on an hourly-rate basis.
We conclude, therefore, that the trial court should have fixed the fee based upon the work left to be performed for the three sisters in the will contest action after the contingent fee contracts were signed. Saucier, supra. The work performed in the will case after September 1979 was minimal and in opposition to the work of their adversary lawyers who were attempting to reverse this court's judgment of December 3, 1979. That contest ended March 3, 1980. Consequently, we find the trial court's reduction of the fee of the three sisters to one-fourth of their inheritance still pronounces an unreasonable and unconscionable fee.
We shall reduce the fee owed by the three sisters to $3,000, or $1,000 each, for the work performed for the three sisters on the will case. See Saucier, supra. The fee of the lawyers thereafter shall be in accord with their agreement with their clients on December 28, 1979, to process the intestate succession to a final judgment and on an hourly-rate basis.

OTHER ISSUES

CONCLUSION
The one-third contingency fee is not excessive as it relates to Irma Tucker, and her brothers, Melville and Charles Sibley, the three original clients. Keyser and Kirkpatrick represented these heirs for five years, achieving the result desired by these clients. These attorneys thereafter spent approximately 1000 hours processing the intestate succession to finality, during which time they incurred or advanced expenses and were not able to accept some other gainful employment of their legal services.
We further find that the trial court correctly concluded that the attorneys and five of the six heirs contracted that the attorneys would receive expenses for processing the intestate succession to a conclusion. The trial court also correctly found that the attorneys were entitled to be reimbursed for all expenses proportionately under the terms of the contingent fee agreements.
We shall amend the judgment to allow the attorneys to recover, pro rata from their clients, the compensation for processing the succession to finality that they agreed to on December 28, 1979, $50 per hour and expenses. That agreement need not be negated simply because other provisions of the Conveyance Agreement were found to be invalid.

MOTION FOR NEW TRIAL
The trial court omitted from the reasons for judgment, legal interest on all sums to be refunded the various heirs by the attorneys. The heirs of Ms. Straughn, substituted after her death in 1987, requested the trial court to supplement its Reasons for Judgment to include legal interest. The trial court denied this motion stating that the claim should have been asserted in an application for new trial or on appeal. On *810 November 16, 1988, the heirs filed their motion for a new trial.
In a separate opinion dated September 7, 1989, the trial court dismissed the demands of Ms. Straughn and her substituted heirs from the concursus proceeding under these circumstances:
Ms. Straughn had conveyed two-thirds of her interest in the Dubuisson succession and "all contract rights and right to contest any contract previously entered" to Leroy Smith and Robert Wood for cash paid her on January 2, 1981. In response to the concursus proceeding, Ms. Straughn asserted her claim to her share of the succession.
At trial, a stipulation was reached between the Straughn heirs and Smith and Wood that Smith and Wood would renounce any right or claim to the one-third interest transferred to Kirkpatrick and Keyser by Ms. Straughn's contingent fee agreement, and stipulated that if the attorneys' fee was reduced, the reduction would inure to the benefit of Ms. Straughn's heirs and not to Smith and Wood.
The Straughn heirs contend in their appeal that the trial court erred in dismissing their claims based on the contract with Smith and Wood and in sustaining the exception of no cause of action. Notwithstanding that no appeal was taken from the trial court's dismissal of Straughn from the concursus proceeding on the Wood and Smith exception of no cause of action, that judgment is reviewable on the merits of the final judgment of the consolidated cases which judgment is here appealed. See Harris v. Bardwell, 373 So.2d 777 (La.App. 2d Cir.1979).
The Straughn heirs should be placed in the same position as Ms. Straughn's two sisters, Ms. Cook and Zucco. They, like the two sisters, are appealing the unreasonableness and unconscionableness of the contingent fee contracts we have discussed. Smith and Wood's stipulation removes any claim they might have to the one-third part of Ms. Straughn's interest in the Dubuisson succession which Ms. Straughn did not convey to them. We shall reverse the trial court in this respect and include the Straughn heirs in the judgment with Ms. Cook and Zucco. CCP Art. 2164.

DECREE
We affirm the judgment against Ms. Tucker except to the extent that her pro rata share of fees and expenses due Kirkpatrick and Keyser, attorneys, is affected by our amendment of the judgment against the other appellants for their pro rata share.
We affirm the judgment decreeing that the law firm Kirkpatrick and Keyser is entitled to collect, pro rata from their five clients, per stirpes, their expenses and a fee for processing the intestate succession of Ms. Dubuisson to completion, which fee shall be for the number of hours worked and at the hourly rate agreed upon in the Conveyance Agreement. We vacate the judgment otherwise against the attorneys, Kirkpatrick and Keyser, remanding with directions that judgment be entered in favor of Ms. Straughn's heirs, Ms. Cook, and Ms. Zucco obligating them to pay attorneys fees of $1,000 each, or $3,000, for legal services performed in the will contest in addition to their obligation to pay pro rata attorneys fees and expenses for the intestate succession work.
The judgment to be entered on remand shall allow legal interest from judicial demand to the party in whose favor the judgment is entered and shall adjust the pro rata attorney fees and expenses to be paid by each litigant to the attorneys and adjust pro rata the amounts, if any, the attorneys are obligated under this amended judgment to reimburse to each of the clients who have been granted a fee adjustment.
Costs below and here are assessed one-half to the attorneys and one-half to the other appellants.
AMENDED IN PART, VACATED IN PART AND REMANDED WITH DIRECTIONS.