The PEOPLE of the State of Colorado, Complainant,

v.

Vincent FRANCO, Attorney-Respondent.

Nos. 84SA294, 85SA59.

Supreme Court of Colorado, En Banc.

April 15, 1985.

---

Linda Donnelly, Disciplinary Prosecutor, Denver, for complainant.

Duane Montano, Denver, for attorney-respondent.

ERICKSON, Chief Justice.

Disciplinary proceedings were conducted on the basis of two separate complaints and were concluded with a recommendation that the respondent, Vincent Franco, be suspended for six months in each case and that he pay costs of the grievance proceedings and certain attorney fees. We conclude that the suspension should be on a consecutive basis or for a period of twelve months, and that costs and attorney fees should be paid in accordance with the directions contained in this opinion.

Vincent Franco was admitted as a member of the bar of this court on July 28, 1975. He received a letter of admonition in 1979 for failure to file a notice of appeal on time and for charging an excessive fee for the appeal. The Stipulation, Agreement, and Admission of Misconduct that was submitted to this court in 84SA59 contains a recommendation that the respondent be suspended for six months and also requests that the grievance, which was the subject of the stipulation, be consolidated with 84SA294, which involves additional charges of professional misconduct by the respon-

dent. We have consolidated 85SA59 with 84SA294 for the purpose of this opinion.

### 85SA59

### Lucero

The dereliction of professional duties, which was the subject of the stipulation, involves the respondent's representation of Rene Thomas Lucero in a dissolution of marriage action in the Denver District Court. The permanent orders that were entered in that case directed that the residence of the parties be sold, that the first mortgage of $21,352 and other costs of sale be paid, and that the remaining proceeds be divided equally between the husband and wife. Thereafter, the respondent had his client secure his attorney fees by signing a note in the amount of $5,549.77 and caused the note to be secured by a deed of trust on the house which was to be sold.

The respondent asserts, in defense, that he believed that his client's share of the equity would exceed the amount of the note based upon an appraisal that had been made of the property. A motion to clarify the permanent orders was filed by Mrs. Lucero's lawyer when the respondent's deed of trust was discovered. The motion asserted that the respondent had caused the real property to be encumbered in an amount exceeding the value of his client's equity and was set for hearing on November 4, 1983, three days after the closing. At the closing on November 1, 1983, the respondent received a check for the full amount of his fees that exceeded the one-half share of the equity that his client was awarded in the permanent orders. Despite his notice of the wife's claim, the respondent deposited the fee in his personal checking account. By November 2, 1983, the respondent had spent approximately $3,800 of the disputed proceeds even though a hearing was scheduled for November 4, 1983 to resolve the issue.

On November 4, 1983, the respondent appeared and the district court declared that the proceeds should be applied to legitimate liens which existed prior to the issuance of the permanent orders. The court held that $350 spent by the wife prior to the sale, and $300 for repair and certification. costs incurred by the realtor prior to the closing, were to be withheld as part of the cost of the sale and ordered the respondent's client or his representative to pay the wife's lawyer any unpaid portion of the husband's equity.

The wife's lawyer prepared a proposed written order summarizing the court's findings and included a detailed calculation of the amounts due and requested that $2,479.52 be returned with the signed order no later than November 14, 1983. The respondent did not reply, and the judge signed the order.

By December 6, 1983, the respondent had exhausted the proceeds he obtained at the closing. Shortly thereafter, the wife's lawyer filed a motion for a contempt citation because the respondent had not complied with the court's order. The citation was set for hearing on February 21, 1984. On February 21, 1984, the respondent appeared and delivered a check in the required amount with interest. At that time, a grievance had already been filed against the respondent.

As we view the record, the respondent's actions were in good faith until the day that the sale was closed on his client's property. At that time, he was aware that the amount he received exceeded his client's share of the equity. Despite the fact that he was on notice that the money he received and spent was the subject of a motion that was scheduled for hearing three days after the closing, he proceeded to treat the funds as though they were his own and only made the proper reimbursement after a grievance was filed and a contempt citation was issued.

The respondent's conduct in the Lucero case violated Rules 241.6 and 241.6(3) of the Colorado Supreme Court Rules concerning discipline of attorneys and also is contrary to the Code of Professional Responsibility, DR1–102(A)(1) (violation of a disciplinary rule); DR1–102(A)(5) (conduct prejudicial to the administration of justice);

DR1–102(A)(6) (conduct adversely reflecting on respondent's fitness to practice law); and DR5–103(A) (acquiring a proprietary interest in the subject matter of litigation conducted for a client).

## 84SA294

The second disciplinary complaint involves transactions where the respondent breached the Code of Professional Responsibility by issuing "short" checks and by failing to account for funds which he collected on behalf of his client.

### Caywood

Douglas A. Caywood, a forensic science consultant and document examiner, was asked to review certain documents in a criminal case by the respondent. The respondent agreed to hire Caywood and sent a check for $250 as a retainer. An opinion was then rendered by Caywood. The check that was tendered was deposited and was returned marked insufficient funds. When Caywood reached the respondent, after a number of unsuccessful attempts, he was told to redeposit the check.

The redeposited check was returned, and when Caywood was unable to reach the respondent, he filed a complaint with the grievance committee. The respondent submitted a cashier's check for the full amount of the expert witness fee. The bank records, however, disclosed there were insufficient funds to cover the $250 check from May 13 to May 17, 1982, and from May 28 to June 11, 1982. The respondent admits that the check bore the notation "trust account," and that he had no trust account, but maintained that account as his professional corporation account for business purposes. He also admits that he wrote seven checks on the account which were not cleared on first presentment because of insufficient funds. Some of the checks were cleared after being presented for the second or third time and at least ten separate insufficient fund checks were issued during 1982. Respondent has at this time paid all of the dishonored checks.

Respondent's conduct establishes a pattern and practice of writing checks on his business account either with the knowledge that there were insufficient funds or without regard to whether there were funds in the account necessary to pay the checks. He violated DR1–102(A)(1) (misconduct—violation of a disciplinary rule); DR1–102(A)(4) (dishonesty, fraud, and deceit); and DR1–102(A)(6) (conduct adversely reflecting on respondent's fitness to practice law). *See People v. Moore,* 681 P.2d 480 (Colo.1984); *Florida Bar v. Thomson,* 429 So.2d 2 (Fla.1983).

### Rodriguez

The respondent represented Frank Rodriguez on a workmen's compensation claim and agreed to a twenty-five percent contingent fee. In March and May, 1981, he received checks totaling $4,700 for his client. He deposited the checks in his personal business account and did not return the funds or account to his client until after his client had hired another attorney to collect the funds from the respondent. Moreover, at the time the respondent returned the funds, he withheld one-third rather than twenty-five percent as he agreed in the written contingent fee agreement.

In connection with the Rodriguez complaint there are some facts in dispute. Rodriguez was an employee of the City and County of Denver and was a member of the Independent Municipal Employees Federation when he was injured in an industrial accident in 1977. In 1978, he entered into a fee agreement with the respondent. Shortly after that time, the respondent undertook to represent Rodriguez on several other matters, including a civil rights complaint and in negotiations for an appeal to the Denver Career Service Authority to preserve employment for Rodriguez. Rodriguez believed that the Independent Municipal Employees Federation would compensate the respondent for all work other than the workmen's compensation case. The respondent contends that he had a telephone conversation with Rodriguez and

agreed in that conversation that his fee would be one-third of all amounts collected in connection with Rodriguez' claims. He acknowledges, however, that the agreement was never reduced to writing and Rodriguez denies the existence of such an agreement.

Rodriguez had given the respondent a power of attorney for use in the workmen's compensation claim. The respondent used the power of attorney to deposit not only the workmen's compensation checks but also a check for retirement funds that was delivered to the respondent, and deposited in the respondent's account. The respondent did not notify Rodriguez of the collection of the funds even though he had conversations with Rodriguez regarding the progress of the case. Rodriguez first learned the respondent had collected funds under the different claims when he received W–2 forms that the respondent forwarded to him on February 23, 1982. Rodriguez did not know what the W–2 forms related to and had his son-in-law obtain another attorney at a cost of $150. After the respondent was contacted, he sent a letter dated May 12, 1982, listing the checks he had received together with the expenses that had been incurred. He sent Rodriguez the remaining balance after deducting a one-third contingency fee from the three checks that he had deposited to his own account. The respondent had the funds in his possession twelve or thirteen months before the funds were paid to Rodriguez with an accounting.

The respondent's conduct violated DR1–102(A)(1) (violation of a disciplinary rule); DR1–102(A)(4) (dishonesty, fraud and deceit); DR1–102(A)(6) (conduct adversely reflecting on respondent's fitness to practice law); (DR2–106(A) (collection of illegal or excessive fees); DR9–102(A)(2) (preserving identity of client's funds); DR9–102(B)(1) (duty to notify client of receipt of funds); and DR9–102(B)(4) (prompt payment of funds collected for a client).

### Mitigation

The respondent has corrected his banking practices and has opened a separate trust account. He apparently did not use his former client's funds for his own personal gains, but to pay the costs and expenses incident to the handling of a large practice that included many non-paying clients. His legal competence has not been questioned, but his business judgment and his failure to honor the Code of Professional Responsibility cannot be excused.

A number of serious transgressions relate to the respondent's failure to maintain proper records. More importantly, his conversion of his client's funds cannot be tolerated and a plea of financial hardship is of no significance. *Compare People v. Kluver,* 199 Colo. 511, 611 P.2d 971 (1980) *with People v. Bollinger,* 648 P.2d 620 (Colo. 1982). Only the fact that the respondent, apart from these proceedings and a letter of admonition, has had no other disciplinary complaints causes us to follow the recommendation of the Grievance Committee. We do not approve or condone the conduct of the respondent and conclude that a severe disciplinary sanction is required.

### Conclusion

The respondent is suspended for one year from the date of this opinion. He is ordered to pay Frank Rodriguez $150 within thirty days to reimburse him for the attorney fees he expended in obtaining an accounting from the respondent. He is also ordered to pay $1,079.36 as the cost of two grievance proceedings to the committee offices at 190 East Ninth Avenue, Suite 440, Denver, Colorado 80203, within ninety days.