**The PEOPLE of the State of Colorado, Complainant,**

v.

**Robert J. MASON, Attorney–Respondent.**

No. 96SA402.

Supreme Court of Colorado, En Banc.

May 19, 1997.

---

Linda Donnelly, Disciplinary Counsel, James S. Sudler, Assistant Disciplinary Counsel, Denver, for Complainant.

Michael D. Gross, Colorado Springs, for Attorney–Respondent.

PER CURIAM.

A hearing panel of the supreme court grievance committee approved the findings and recommendation of a hearing board that the respondent in this disciplinary proceeding be suspended for six months. The respondent has excepted to the findings and recommendation on the ground that he has committed no disciplinable conduct. We disagree, and accept the panel's recommendation.

I.

The respondent was admitted to the practice of law in Colorado in 1961. The hearing board resolved most of the charges against the respondent on cross motions for summary judgment filed by the complainant and the respondent. The hearing concerned the one remaining disciplinary charge, whether the respondent had violated Colo. RPC 1.7(b), and the appropriate disciplinary sanction. The following issues were determined on the motions for summary judgment based on the parties' agreement of undisputed facts.

On September 27, 1983, C. Ray Page purchased a cabin located on United States Forest Service land. The Forest Service granted Page a special use permit allowing him to keep the cabin on government property. Page conveyed the cabin, but not the permit, to the C. Ray Page Living Trust (later called the Page Children Living Trust) in 1985. On December 14, 1992, the trust conveyed the cabin to Thomas C. Ledbetter, Page's business partner. Page continued to hold the special use permit.

Also in December 1992, Page and Ledbetter obtained a loan from the Castle Rock Bank in the amount of $24,400. The consumer loan agreement was signed on December 29, 1992. The loan was secured by a security agreement granting the bank a security interest in the cabin (which was considered personalty) and the special use permit.

The loan was in default in March 1993, and there were ongoing discussions between Ledbetter and the bank regarding the delinquencies. During the same time period, Page and Ledbetter began to disagree and each hired his own lawyer. Page retained the respondent with whom he had been dealing for a long time.

In April 1993, Page and Ledbetter, and their respective lawyers, met to discuss repayment of the loan. The participants did not review any loan documents or discuss the cabin or the permit at the meeting, however.

In July 1993, Page owed the respondent about $50,000 in legal fees for work performed previously. Page offered to transfer the cabin to the respondent to settle the past due legal fees and the respondent accepted the offer. On July 1, 1993, the cabin and the special use permit were transferred to the respondent. The respondent and his client filed a request with the Forest Service to transfer the cabin to the respondent, and on July 28, 1993, a bill of sale was recorded, transferring it to the respondent.

The bank filed a verified complaint on the promissory and seeking replevin, in the Douglas County District Court on August 12, 1993. The complaint alleged that Page and

Ledbetter had given the bank a security interest in the cabin. According to the respondent this was the first time he learned that the bank had a security interest in the cabin which Page had purportedly transferred to him.

The respondent filed an answer to the complaint on behalf of Page on October 6, 1993, and a cross-claim against Ledbetter. The answer asserted that the bank did not have a lien on the property as claimed in the complaint, which included the cabin. In his answer to the complaint and cross-claim and his own cross-claim against Page, Ledbetter stated that Page had transferred Page's interest in the cabin to him as an inducement and security for the purpose of obtaining a loan and personal guarantee.

The respondent filed an answer on Page's behalf to Ledbetter's cross-claim on November 4, 1993. The respondent's answer denied the specific allegations that: (1) Page had represented to Ledbetter that he had an interest in the cabin; (2) the personal property, including the cabin, would be available to secure the loan; and (3) Page would transfer the cabin to Ledbetter for the purpose of obtaining the loan. Moreover, the respondent specifically denied paragraph 27 of Ledbetter's cross-claim, which stated: "Subsequent to the Defendant's [Ledbetter's] execution of loan agreements and security agreements, the Defendant, C. Ray Page, has transferred by National Forest Service Forms his interest in the special use permit to some third party." The respondent signed this answer to the cross-claim even though he believed that Page had previously transferred his interest in the cabin and special use permit to the respondent. Between August 1993 and February 1994, the respondent never disclosed to the district court or the bank's lawyer the respondent's interest in the cabin.

On February 16, 1994, following a trial, the district court concluded that the bank had a valid security interest in the cabin granted to it by Page and Ledbetter. The court therefore ordered the defendants (including Page who continued to be represented by the respondent) to surrender possession of the cabin forthwith to the bank. The respondent still had not told the district court that he claimed an interest in the cabin.

The counsel for the bank requested the Forest Service to transfer the cabin to the bank pursuant to the district court's order. On March 8, 1994, the respondent sent a letter to the Forest Service which objected to transferring the cabin to the bank because the cabin was titled in the respondent's name. The Forest Service then informed the bank that the cabin could not be transferred to the bank because of the respondent's interest in it.

The bank subsequently filed a motion to amend its complaint to add the respondent as a party and to add claims of fraud and fraudulent conveyance. The respondent objected, stating that the action was concluded by the court's judgment against the defendants. Nevertheless, the court permitted the bank to amend the complaint, and the respondent and Page each obtained separate counsel to represent them.

The hearing board determined that the foregoing facts demonstrated that the respondent violated Colo. RPC 1.8(j), which states:

(j) A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may:

(1) acquire a lien granted by law to secure the lawyer's fee or expenses; and

(2) contract with a client for a reasonable contingent fee in a civil case.

The respondent argues that the purpose and scope of Colo. RPC 1.8(j), which is the same as former DR 5–103(A), is to deter common law champerty and maintenance, and, since the respondent's interest in the cabin was not the result of champerty or maintenance, the respondent could not have violated the rule. We disagree.

The comment concerning Colo. RPC 1.8(j) provides:

Paragraph (j) states the traditional general rule that lawyers are prohibited from acquiring a proprietary interest in litigation. This general rule, *which has its ba-*

sis in common law *champerty and maintenance,* is subject to specific exceptions developed in decisional law and continued in these Rules, such as the exception for reasonable contingent fees set forth in Rule 1.5 and the exception for certain advances of the costs of litigation set forth in paragraph (e).

(Emphasis added.) While this rule has its basis in the common law, the scope of the rule has not been limited to conduct which would constitute champerty and maintenance. *See People v. Franco,* 698 P.2d 230, 231–32 (Colo.1985) (lawyer's obtaining interest in real property in excess of his client's equity in the property, and therefore constituting an interest in property subject to dispute, violated DR 5–103(A)). There is no question that the respondent's interest in the cabin was literally "a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client."

Courts in other jurisdictions have enforced the literal language of the rule against acquiring a proprietary interest in the subject of litigation, despite the absence of champerty or maintenance. *See, e.g., State ex rel. Neb. State Bar Ass'n v. Thor,* 237 Neb. 734, 467 N.W.2d 666, 674 (1991) (lawyer representing Chapter 7 debtors violated DR 5–103(A) by purchasing clients' property after abandonment by trustee while abandonment remains subjection to objection by creditors); *Office of Disciplinary Counsel v. Baldwin,* 74 Ohio St.3d 592, 660 N.E.2d 1145, 1146 (1996) (purchasing client's property at public auction without informing client of purchase violated DR 5–103(A)); *State ex rel. Okla. Bar Ass'n v. English,* 853 P.2d 173, 174–75 (Okla.1993) (by secretly purchasing creditor's claim, lawyer for creditors' committee in bankruptcy case violated DR 5–103(A)).

■ In *Louisiana State Bar Ass'n v. Sanders,* 568 So.2d 1025, 1028 (La.1990), the court suspended a lawyer for acquiring an interest in a client's property that became the subject of litigation. Particularly relevant to this case, the Louisiana Supreme Court held that "DR 5–103(A) forbids an attorney from acquiring any right 'which is genuinely disputed and likely to become the subject of litigation.'" 568 So.2d at 1028

(quoting *Succession of Cloud,* 530 So.2d 1146, 1150 (La.1988)).

Furthermore, the prohibition in the disciplinary rule [DR 5–103(A)] does not apply only when there is a pending lawsuit. When the client consults the lawyer about a right which is genuinely disputed and likely to become the subject of litigation, and the attorney agrees to pursue the claim, the prohibition applies. Otherwise, there would be too much potential for abuse by the attorney who has substantial control over the filing or the answering of a suit.

*Succession of Cloud,* 530 So.2d at 1150. This reasoning applies directly to the facts of this case. When the respondent acquired his interest in the cabin, the ownership of the cabin was "genuinely disputed and likely to become the subject of litigation." We agree with the hearing board that the respondent violated Colo. RPC 1.8(j) by acquiring an interest in the cabin.

The hearing board also found that the respondent had violated Colo. RPC 1.7(b), which provides in part that "[a] lawyer shall not represent a client if the representation of that client may be materially limited ... by the lawyer's own interests, unless: (1) the lawyer *reasonably* believes the representation will not be adversely affected; and (2) the client consents after consultation." (Emphasis added.) The key provision is that the lawyer must *reasonably* believe, not just have a subjective belief that the representation will not be adversely affected.

■ The respondent claims that he could not have violated Colo. RPC 1.7(b) because he and his client had no actual conflict of interest with respect to ownership of the cabin. The respondent points out that it would have been in Page's interest to satisfy the $50,000 debt he owed to the respondent with the cabin rather than satisfy the lesser debt owed to the bank. The fact that Page ultimately, after a significant and pointless period of delay, transferred his interest in the cabin to the bank *after* the respondent and Page retained separate counsel, undercuts the respondent's assertion of such unity of interest. But the point is that the respon-

dent's wish to keep the cabin for himself interfered with his duty to explain the possible strategies that Page could pursue. The hearing board's conclusion that the respondent also violated Colo. RPC 1.7(b) is fully supported by the record and is correct.

■ On summary judgment, the hearing board also determined that the respondent violated Colo. RPC. 3.3(a)(2) (knowingly failing to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client); Colo. RPC 4.1(b) (knowingly failing to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client); and Colo. RPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation). The respondent asserts that his failure to disclose his claim to ownership of the cabin was not a "material fact" since if the bank's interest in the cabin was valid, the respondent's subsequent purchase of the cabin would be subject to the bank's lien "and short of burning the cabin down, Page could not defraud the bank of their claim."

As the complainant points out, however, the practical problem faced by the bank because of the respondent's nondisclosure was that it had not sued the real party in interest, the respondent. The respondent and Page knowingly attempted to mislead the court and the other parties into thinking that Page had *not* transferred his interest in the cabin and the special use permit to a third party. In the respondent's answer to Ledbetter's cross-claim he specifically denied that Page had tried to transfer his interests to a third party. The respondent's defense that he would have disclosed his claimed interest in the subject matter of the litigation if anyone had just asked him misses the point. The respondent knew that the court and the other parties had no idea that Page's lawyer actually claimed ownership of the cabin. To the respondent and his client, the court proceedings were a meaningless charade since they knew who really claimed ownership of the cabin.

Of course the respondent's claimed ownership was a material fact. Notwithstanding his protestations in this court that he and Page could not prevail in defrauding the bank because the respondent took subject to the bank's lien, the respondent objected to transferring the cabin to the bank because the cabin was titled in the respondent's name. This forced the bank to amend its complaint to add the respondent as a party and to add claims of fraud and fraudulent conveyance. Had the bank named the respondent as a defendant in the initial proceeding, the respondent could not have objected to the transfer of the cabin to the bank. The proceedings were needlessly multiplied and prolonged because of the respondent's desire to retain the cabin. The respondent therefore violated Colo. RPC 3.3(a)(2), Colo. RPC 4.1(b), and Colo. RPC 8.4(c) as the hearing board found, as well as Colo. RPC 8.4(d) (engaging in conduct that is prejudicial to the administration of justice).

Finally, the respondent alleges that Colo. RPC 8.4(h) (and thus former DR 1–102(A)(6)), which the hearing board found the respondent violated, is meaningless. This precise argument was considered and rejected in *People v. Morley*, 725 P.2d 510, 515–16 (Colo.1986).

## II.

■ The hearing panel accepted the board's recommendation that the respondent be suspended for six months. The respondent has not as a practical matter addressed this issue in his exceptions since he maintains that no discipline whatsoever is appropriate.

Under ABA *Standards for Imposing Lawyer Sanctions* 6.12 (1991 & Supp.1992) (ABA *Standards*):

> Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.

The commentary to standard 6.12 cites *In re Nigohosian*, ·88 N.J. 308, 442 A.2d 1007 (1982). Nigohosian was suspended from the

practice of law for six months for, among other things, failing to disclose to the court and to opposing counsel the fact that he had previously conveyed property that was the subject of a settlement to someone else. 442 A.2d at 1009–10.

The hearing board found the existence of the following factors in aggravation: the respondent acted with a dishonest or selfish motive, ABA *Standards* 9.22(b); he engaged in a pattern of misconduct, *id.* at 9.22(c); there are multiple offenses, *id.* at 9.22(d); he has refused to acknowledge the wrongful nature of his conduct, *id.* at 9.22(g); and the respondent has substantial experience in the practice of law, *id.* at 9.22(i).

In mitigation, the respondent has no prior discipline in thirty-five years of practice, *id.* at 9.32(a); he has made full and free disclosure during the disciplinary proceedings, *id.* at 9.32(e); and the respondent has a good character and reputation, *id.* at 9.32(g).

Considering the factors in aggravation and mitigation together with the seriousness of the misconduct, we have concluded a suspension for six months is an appropriate sanction. Accordingly, we accept the hearing panel's recommendation. Some members of the court, however, would have imposed more serious discipline.

### III.

It is hereby ordered that Robert J. Mason be suspended from the practice of law for six months, effective thirty days after the issuance of this opinion. It is also ordered that the respondent pay the costs of this proceeding in the amount of $476.30 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Denver, Colorado 80202.