The PEOPLE of the State of
Colorado, Complainant,

v.

Winchel Wayne REED, Attorney–
Respondent.

No. 98SA7.

Supreme Court of Colorado,
En Banc.

March 9, 1998.

Linda Donnelly, Disciplinary Counsel, Kenneth B. Pennywell, Assistant Disciplinary Counsel, Denver, for Complainant.

Waldbaum, Corn, Koff, Berger & Cohen, P.C., Nancy L. Cohen, Scot M. Peterson, Denver, for Attorney–Respondent.

PER CURIAM.

The respondent in this lawyer discipline case was admitted to practice law in Colorado in 1967. A hearing panel of the supreme court grievance committee approved the findings and recommendation of a hearing board that the respondent be suspended for six months. We accept the hearing panel's recommendation and order that the respondent be suspended for six months.

I

Based on a stipulation between the parties and the evidence presented at the hearing, the hearing board found that the following had been established by clear and convincing evidence.

In 1992, the respondent was a sole practitioner. In May 1992, the respondent began representing Darry Ferguson, the principal shareholder and CEO of Petrocarbon, an oil and gas company with properties located primarily in Wyoming. Minority shareholders included Ferguson's daughter, brother, and several others. Petrocarbon and Coronado Oil Company had entered into a joint venture in the late 1980s. A dispute arose over calculation of the net profits of the venture and Coronado brought an action against Petrocarbon and Ferguson in Wyoming state court in September 1990. The respondent did not represent any of the defendants in the Wyoming action.

Before the Wyoming case went to trial, both Ferguson and Petrocarbon filed separate Chapter 11 bankruptcy petitions, which

had the effect of automatically staying the Wyoming proceeding. The Wyoming plaintiffs applied for and received relief from the automatic stay to the extent that they were seeking damages based on fraud.

The larger creditors of the Petrocarbon bankruptcy estate included Central Bank and Darry Ferguson. Central Bank was also a creditor of Ferguson's bankruptcy estate because Ferguson had been a personal guarantor of the credit facility between Central Bank and Petrocarbon. Petrocarbon and Ferguson wanted to bring an action against the bank for breach of the credit facility and against the bank and Coronado for disclosure of confidential information. On May 29, 1992, the bankruptcy court approved the respondent as special counsel to Ferguson for bringing adversary actions against Central Bank, Coronado, and others.

The respondent filed an action in the District Court for the City and County of Denver (district court) on behalf of Ferguson *and* Petrocarbon against the defendants named above on July 16, 1992. The respondent did not have the bankruptcy court's approval to represent Petrocarbon, however, and the evidence is conflicting whether he even sought such approval before the action was filed. In any event, the lawyer for the Petrocarbon bankruptcy estate filed an application on September 9, 1992 to employ the respondent as special counsel in the district court action. The bankruptcy judge denied the application pursuant to 11 U.S.C. § 327(a), (e) (1994) (setting out guidelines for court approval of lawyer for bankruptcy estate); citing *In re Ginco, Inc.*, 105 B.R. 620 (D.Colo.1988) (holding that law firm's dual representation of estate and principal shareholder, officer, and

debt guarantor presented sufficient conflict to raise "adverse interest" to preclude employment of firm as debtor's counsel).

After the application was denied, the respondent asked another lawyer, Richard James Goff, if he would be interested in representing Petrocarbon in the district court case. In 1992, Goff was relatively new to the practice of law. His court experience was limited to handling misdemeanor traffic offenses and he had only participated in one civil trial that lasted more than one day in which he was co-counsel with Karen Hendrick,[1] who was lead counsel. Despite Goff's lack of experience, which the respondent either knew or should have known about, the respondent approached him to substitute as counsel for Petrocarbon in the district court. Goff shared office space with Hendrick and the respondent until June 1993.

Petrocarbon entered into a contingent fee agreement with Goff on October 26, 1992, although Goff does not remember having signed the agreement. The respondent drafted the agreement. The same day, Goff and the respondent signed and filed a motion for substitution of Goff as counsel for Petrocarbon.

The hearing board found that "[n]umerous other documents and pleadings were thereafter filed in the Denver District Court case, many of which have the appearance of being jointly prepared by Respondent and Mr. Goff." While the respondent signed his own name to these pleadings on behalf of Ferguson, he also signed Goff's name on the documents and pleadings even though "Goff had little, if any, active role in preparing or reviewing these pleadings."[2]

---

1. During this same time period, the respondent and Hendrick shared office space together, and the entry to their office suite bore the name "Hendrick and Reed," and each had a letterhead stating "Hendrick and Reed." In addition, several of the documents the respondent filed in the district court case bear the name "Hendrick and Reed" above the respondent's signature. Resolving conflicting evidence, the hearing board found that no partnership ever existed between the respondent and Karen Hendrick, and no partnership existed with the name "Hendrick and Reed."

2. C.R.C.P. 11 provides in part that:

> Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name.... The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and *belief formed after reasonable inquiry, it is* well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

The respondent testified that early in the district court case, Goff gave him "blanket" express authority to sign any and all pleadings on Goff's behalf. Goff denied that he gave the respondent any such authority. The respondent also asserts that if Goff did not give him *express* authority, he had implied authority to sign the documents.

Although he initially agreed to represent Petrocarbon to gain trial experience, Goff came to realize that he was in over his head. After having done almost nothing in the case, he filed a motion to withdraw on July 23, 1993. Goff testified that the only court documents he signed personally were the motion for substitution of counsel, the documents relating to his motion to withdraw, and his two responses to the objections to his motion to withdraw. None of the other documents, including motions for extensions of time, notices of deposition, responses to dispositive motions, and more, was signed by him and he had no active role in the preparation or review of them.

The respondent continued to sign documents with Goff's name, even after Goff filed his motion to withdraw. The respondent signed multiple documents in the district court case, using the name "Richard Goff," and he purposely signed Goff's name in a style different from the his own signature, without any indication whatsoever that he was signing in a representative capacity. Whether or not the respondent had the authority to sign Goff's name before Goff's motion to withdraw on July 23, 1993, the hearing board found by clear and convincing evidence that after July 23 the respondent "had no authority to sign Mr. Goff's name to Denver District Court pleadings or documents and had no reasonable basis to believe that he had such authority." By disguising his own handwriting in signing Goff's name, and not otherwise revealing that he was signing another lawyer's name in a representative capacity, the respondent "misrepresented to both the court and opposing counsel the involvement or lack of involvement of Richard Goff in the case."

The respondent's misconduct occurred both before and after the effective date of the Rules of Professional Conduct, January 1, 1993. He was found to have violated DR 1–102(A)(4) and Colo. RPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 1–102(A)(5) and Colo. RPC 8.4(d) (engaging in conduct prejudicial to the administration of justice); and DR 7–102(A)(5) and Colo. RPC 3.3(a)(1) (knowingly making a false statement of law or fact to a tribunal). By effectively disregarding the bankruptcy court's ruling that he could not represent both Ferguson and Petrocarbon in the district court litigation because of a conflict of interest, the respondent also violated DR 7–106(A) and Colo. RPC 3.4(c) (disregarding a ruling of a tribunal); as well as DR 5–105(B) and Colo. RPC 1.7(a) (representing a client when the representation of that client will be directly adverse to another client). Finally, because he held himself out as having a partnership with Karen Hendrick (see footnote 1 above), the respondent violated DR 2–102(C) and Colo. RPC 7.5(f) (holding oneself out as having a partnership with another lawyer when there is in fact no partnership).

## II

The majority of the hearing panel approved the board's recommendation that the respondent be suspended for six months. Three of the eight panel members voting dissented in favor of a longer period of suspension. Neither of the parties has excepted to a six-month suspension.

Under the ABA *Standards for Imposing Lawyer Sanctions* 6.12 (1991 & Supp.1992) (ABA *Standards*):

> Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is im-

---

Even though the language of Rule 11 expressly applies to pleadings, C.R.C.P. 7(b)(2) provides that "rules applicable to ... signing and other matters of form of pleading apply to all motions and other papers provided for by these rules." "Accordingly, an attorney or litigant who signs a motion or other paper has the same obligation as the signer of a pleading to ensure that the document is factually and legally justified." *Jensen v. Matthews–Price*, 845 P.2d 542, 544 (Colo.App. 1992).

properly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.

*See also* ABA *Standards* 6.22 ("Suspension is appropriate when a lawyer knowingly violates a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding.").

In mitigation, we note that the respondent has no prior discipline in over thirty years of practice, *see id.* at 9.32(a); and the board found that he has an otherwise good character or reputation, *see id.* at 9.32(g). As factors in aggravation, however, the respondent had a dishonest or selfish motive, *see id.* at 9.22(b); there is a pattern of misconduct, *see id.* at 9.22(c), and the presence of multiple offenses, *see id.* at 9.22(d); and the respondent has substantial experience in the practice of law, *see id.* at 9.22(i).

This case is analogous to *People v. Mason,* 938 P.2d 133 (Colo.1997). The lawyer in *Mason* violated the Rules of Professional Conduct by knowingly failing to disclose to the court and a third party his ownership interest in property that was the subject of litigation. He engaged in misrepresentation by not disclosing his claim to ownership of the property which was the subject of a dispute between his client and a bank; he acquired a proprietary interest in the subject matter of litigation; and he engaged in a conflict of interest by representing a client who had interests adverse to his own. *See id.* at 135–37. We suspended Mason for six months notwithstanding the fact that he had not been previously disciplined in thirty-five years of practice. *See id.* at 138. We noted, however, that some members of the court would have imposed more serious discipline. *See id.*

The respondent's misconduct in this case goes to the heart of a lawyer's duties of candor and to obey, and not try to evade, a ruling of the court. Taking into consideration the factors in mitigation and aggravation together with the seriousness of the misconduct, we have concluded that a sus-

pension for six months is appropriate. Some members of the court, as in *Mason,* would have imposed more serious discipline, however.

### III

Accordingly, it is hereby ordered that Winchel Wayne Reed be suspended from the practice of law for six months, effective thirty days after the issuance of this opinion. It is also ordered that the respondent pay the costs of this proceeding in the amount of $9,153.56, within ninety days after the announcement of this opinion, to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Denver, Colorado 80202.

BENDER, J., does not participate.